Marshall, C. J.
The above-entitled causes have been argued separately in this court, but- in cause No. 20586 the question is so similar to one of the questions in cause No. 20686 that one opinion will dispose of both matters. The discussion will be based upon the record of No. 20686.
Flossie Baldwin, on May 4, 1925, suffered certain personal injuries in a collision between a Ford coupe driven by her and a truck owned and driven by George Heidle, at the intersection of Miami street *378 and South Wayne street, in the city of Piqua, Ohio. In her petition filed in the court of common pleas of Miami county she alleged that the defendant was driving his car at a high rate of speed, and was at the time of the collision in the act of driving his truck in an easterly direction on Miami street, which is not a main thoroughfare, and across South Wayne street, which is a main thoroughfare, and that said intersection is in a closely built-up section of the city of Piqua. The coupe was being driven southwardly on South Wayne street. The accident occurred in the early afternoon, and the pavement was dry at the time. All witnesses agreed that Miss Baldwin was driving her car at the rate of 15 to 20 miles per hour, but the witnesses greatly differed as to the speed of the truck and the time of arrival of each of the cars at the point of intersection. The petition alleged that J-Ieidle was driving the truck at a high rate of speed, carelessly and negligently, and that he did not pause or stop before entering upon South Wayne street; and the petition contained the further allegation of the existence of a city ordinance, as follows:
“That by an ordinance of the council of the city of Piqua said South Wayne street was designated as a main thoroughfare, with legible and appropriate signs erected not nearer than one hundred (100) feet from the intersection of South Wayne street with Miami street, a cross street.”
The petition contained no other description of or reference to the ordinance. The answer contained a general denial and a plea of sole negligence of plaintiff, and in a cross-petition damages in the sum of $20 were claimed upon the ground of the sole *379 negligence of the plaintiff. Claiming that the plaintiff was driving on the wrong side of the street, the answer pleaded other portions of the same ordinance referred to in the petition, which provided that vehicles shall be driven in a careful manner and with due regard for the safety of pedestrians, other vehicles, and property, and that all vehicles at all times shall be driven on the right side of the street.
The ordinance referred to in the petition contains a provision, in Section 40 thereof, that main thoroughfares “shall be understood to mean all sections of public roads and highways on which street cars or electric cars run,” and Section 6310-30, General Code, contains the same provision. It is conceded that South Wayne street carried a street railway and was therefore a main thoroughfare. Section 23 of the ordinance gives to drivers of vehicles traveling on main thoroughfares the right of way over all vehicles, both to the right and left, and requires all vehicles to the right and left to be brought to a full stop, changing gear before entering such main thoroughfare. The state statute gives to vehicles upon the main thoroughfare the right of way, but does not require vehicles entering such main thoroughfare from an intersecting highway to come to a full stop. Both by the ordinance and .by the state law, “ ‘Right of way’ means the right of a vehicle to proceed uninterruptedly in a lawful manner in the direction in which it is moving in preference to another vehicle approaching from a different direction into its path.” A stop line was painted across Miami street at the lot line, which is approximately 11 feet from the west curb of South Wayne avenue, and a stop sign was erected on Miami street about *380 100 feet from the intersection. Heidle testified that he entered the main thoroughfare at a speed of about 5 miles an hour, but admitted on cross-examination that he did not bring the truck to a full stop. Miss Baldwin endeavored to drive in front of the truck and almost succeeded in doing so, but the truck collided with her coupe at the running board and the cars were in some way locked and the coupe was pushed eastwardly to the curb with sufficient force to break the wheels. The testimony of plaintiff and defendant is wholly irreconcilable, and each of the parties narrated a version of the ease which, if believed, would have rendered the collision impossible. Miss Baldwin testified that she first saw Heidle when she was only 30 or 35 feet from the intersection and that Heidle was at that time 50 or 60 feet back of the stop line, and the stop line was approximately 11 feet from the curb. Inasmuch as the truck was preparing to make a left turn, it is impossible that it could have been making the same speed that the coupe was making, and she admitted that she was going 15 or 20 miles an hour. Under such circumstances she would necessarily clear the crossing before his arrival. On the other hand, Heidle testified that when he first saw Miss Baldwin she was 150 feet from the crossing, and that he was at that time at the curb line of "Wayne street. He testified that he was traveling about 5 miles an hour, and under those circumstances he would easily have crossed the street before her arrival. The jury rendered a verdict of $8,000, upon which judgment was entered, and this was affirmed by the Court of Appeals.
The first assignment of error we shall consider *381 relates to the admission of the ordinance in evidence. It is urged that upon the meager pleading of the ordinance in the petition only that portion of the ordinance which described South Wayne street as a main thoroughfare was competent. It is a well-settled principle of pleading that the allegations of a pleading should be liberally construed in favor of the pleading, in' order to promote and facilitate the statement of a cause of action or defense. And this rule must ordinarily prevail, in the absence of a motion to make the pleading more definite and certain. The majority of this court are of the opinion that this allegation did not put the defendant upon inquiry as to the requirement to bring defendant’s vehicle to a full stop and then change gears before entering the intersection. In view of the final determination of this error proceeding and the necessity for a new trial, it is not necessary to determine whether the error was cured by the admission of the ordinance without objection. That it was necessary to plead the ordinance, and thereby call defendant’s attention to it, is clearly settled in Richards v. Stratton, 112 Ohio St., 476, 147 N. E., 645; Schulte v. Johnson, 106 Ohio St., 359, 140 N. E., 116.
The next assignment of error to be considered relates to the claim that the accident was not the proximate cause of plaintiff’s injuries. The petition alleged injuries to plaintiff’s organs of reproduction, and the issue of fact was as to whether her illness was due to the accident or to pre-existing disease. Special interrogatories were propounded to the jury upon this issue, to which they answered that there was no diseased condition on October 15, 1925, and no symptoms of a diseased condition *382 in the month of May, 1925. The evidence is in conflict, and there was evidence tending to support the jury’s findings, and neither the trial court nor the Court of Appeals saw fit to set aside those findings on the weight of the evidence, and the findings are therefore conclusive upon this court.
Another assignment of error relates to alleged error in that counsel for plaintiff made it clear to the jury that the defendant was carrying casualty insurance. The insurance company was not a party defendant, and the question of insurance was in no sense an issue in the case. Upon the voir dire examination of the jury it appears that inquiries were made of the jurors whether they were financially interested in any liability insurance company, and whether they were engaged in the insurance business, or whether they were then or at any time agents for any insurance company. No objection was made at that time, or at any time, until after verdict, yet one of the grounds of motion for new trial was based upon misconduct of counsel in propounding such questions. The motion was supported by an affidavit setting forth the questions and answers. If objection had been made at the time, a serious question would have been presented. The question is the more serious because the Courts of Appeals of the different districts in this state have reached different conclusions upon the prejudicial character of such voir dire examination. This court may not under the state of this record make a declaration upon that question. Counsel for the defendant having made no objection or even protest at the time, and having permitted the case to be fully tried and verdict rendered, the defendant *383 will be estopped from asserting such ground of error. The plaintiff would be put at a distinct disadvantage and the courts might well feel that they had been trifled with, if the defendant should first seek to get a favorable verdict at the hands of the jury, and, failing in that, then assert other grounds which were available to him at the very inception of the trial.
It is further urged that counsed for plaintiff was guilty of misconduct while addressing the jury,' at which time he made the following statement:
“The defendants have had a man present in the back of the room during the trial of this case, who has been walking back and forth and walking up and down in the corridor”—
At above point objection was made, and the court ordered counsel to refrain from further argument of that kind. It is explained by counsel for plaintiff that he was arguing upon the question of the character of the plaintiff, which had been indirectly challenged by the defendant, and that he was endeavoring to state that if anything detrimental to her reputation were known in the community the person referred to would have discovered the same and would have produced direct testimony. In that statement no reference was made to the insurance company, or to the fact that the person referred to was the agent of the insurance company with whom defendant carried a policy. It is said, however, that every member of the jury as well as every one in the vicinity knew that he was in fact such agent. The trial court in passing upon this question stated that the activity of Mr. Miles, the person referred to, was such that every juror knew that his insurance *384 company was involved, and that that fact was further clearly made to appear by the presence of foreign counsel in the case. This question in the case first arose upon a motion for a new trial, and the common pleas court, being of opinion that no possible prejudice resulted, overruled that assignment of error. We are of opinion that the trial court was best able to judge of the prejudice, if any, growing, out of that matter, and since the question is solely one of prejudice depending upon the facts, the judgment of the trial court will not be disturbed.
The final assignment of error which we shall consider relates to the charge of 'the court. The language used by the court was as follows:
“If you find, under the state law, that TIeidle drove onto South Wayne street, that being a main thoroughfare, without proper regard to the right of way which the law gave to Miss Baldwin upon such street, and in a manner otherwise than the exercise of ordinary care, and the accident proximately resulted therefrom, then the law would say that such action on his part was negligence in itself.”
The state law referred to is found in the following sections':
“Sec. 6310-28. ‘Right of way’ means the right of a vehicle to proceed uninterruptedly in a lawful manner in the direction in which it is moving in preference to another vehicle approaching from a different direction into its path.”
“Sec. 6310-30. For the purpose of enforcing the r.oad regulations referred to in this chapter, the main thoroughfare shall be understood to mean all *385 sections of public roads and highways on which street cars or electric cars run and also all main market and intercounty highways within the state. ’ ’
“Sec. 6310-31. Vehicles and street cars going on main thoroughfares shall have the right of way over those going on intersecting thoroughfares.”
There is no difficulty in interpreting the last two sections above quoted. It is admitted that South Wayne avenue carried a street railroad, and it was therefore clearly a main thoroughfare. The real difficulty arises out of the true, interpretation of Section 6310-28, General Code, as to the rights of a person driving on the main thoroughfare. The ordinance of the city of Piqua contains all of the provisions of the above-quoted sections of the Code, and, in addition thereto, Section 23 of that ordinance required vehicles approaching a main thoroughfare from an intersecting highway to be brought to a full stop, then changing gear before entering such main thoroughfare. It is admitted by the defendant that he did not bring his truck to a full stop, and it is clear therefore that he violated the ordinance. His failure to stop did not violate the state law. The city had a right to adopt additional regulations, and the requirement to stop is not questioned as a valid exercise of the police power. The objections to the above-quoted portion of the charge are twofold: First: that it amounted to an instruction to the jury that the coupe had the right of way absolutely, and at all events, and that the statute is interpreted by that language as conferring a privilege which is inflexible; second, that it construes the state law as imposing a duty, the violation of which constitutes negligence per se.
*386 It was held in the case of Schell v. DuBois, Admr., 94 Ohio St., 93, 113 N. E., 664, that:
“The violation of a municipal ordinance passed in the proper exercise of the police power in the interest of the public safety, and not in conflict with general laws, is negligence per se, and where such act of negligence by a defendant is the direct and proximate cause of an injury, not direptly contributed to by the want of due care on the part of the injured person, the defendant is liable.”
The same rule is declared in the same case per-, taining to a statute. The declaration in that case pertained to an ordinance making it unlawful for a person to drive an automobile past a street car standing for the purpose of receiving or discharging passengers. That decision has been approved and followed in a number of subsequent cases, and in each instance the statute or ordinance was one which fixed a definite duty. If the statute in the instant case defining right of way gives the driver on a main thoroughfare an unlimited license to drive past all intersecting roads and streets at a rate of speed within legal limits, regardless of other vehicles entering thereon from intersecting streets and highways, then a definite rule has been declared, and it would be the duty of all drivers of vehicles approaching a main thoroughfare from intersecting roads to keep out of the way,of vehicles on the main thoroughfare, and their failure so to do would be negligence per se.
This proposition is before this court for the first time and the subject challenges deliberate inquiry. If a vehicle is driven on a main thoroughfare and another vehicle is approaching such main thorough *387 fare over an intersecting highway, and each vehicle is driven at a lawful rate of speed, and if by reason of each vehicle continuing at such rate of speed through the intersection a collision would occur, the fault would lie with the vehicle approaching over the intersecting highway. It would be the duty of the driver of such vehicle under such circumstances to stop or check his speed to permit the other to pass. It would be the right of the other under such circumstances “to proceed uninterruptedly in a lawful manner.” That is to say, he would owe to the driver upon the intersecting highway such duty as would be owing to any transgressor not to willfully injure him. If, after observing the position of the other vehicle, he proceeds in an unlawful manner, he would not be entitled to recover, even though the other driver were also at fault. The driver on main thoroughfares has the right of way. This is not an absolute or inflexible or unqualified right. The right of way establishes precedence only when rights might otherwise be evenly balanced. It is the duty of the driver on the main thoroughfare to observe all applicable laws and ordinances regulating speed, and if he is driving at an excessive and unláwful rate of speed, so that the other could not reasonably estimate the speed or make reasonable calculations of the time of his arrival at the intersection, or, if such driver on the main thoroughfare is so far distant from the crossing that a reasonably prudent driver on the intersecting highway might reasonably expect to cross in safety, the “right of way” would not change the rule of liability. The relative distances of the two vehicles from the intersection at the first opportunity of each to observe the approach *388 of the other, and the relative speed of each within lawful limits, are elements which the triers of the facts must consider in their estimate of conduct. The driver on the intersecting highway is not obliged .to wait until no other car is in sight. On the highway outside of municipalities and in municipalities having no ordinance requiring it, he is not obliged to stop, and, even when required to stop, may start when it is reasonably safe to do so. The statute above quoted, defining “right of way,” applies only when the vehicle claiming the right of way is continuing in the same direction through the intersection. And the driver of such vehicle can only proceed uninterruptedly when there is no other vehicle crossing the highway under circumstances which give to such other vehicle equal or superior rights upon the highways.
It must further be borne in mind that the statute by its terms only gives to the vehicle on the main thoroughfare a “preference.” It is a privilege not to be exercised in total disregard of the rights of others. This is the only interpretation to be put upon the statute consistent with the use of highways for purposes of modern travel. If vehicles desiring to intersect a main thoroughfare were required to wait until no other cars were in sight, the traffic problem of our cities would be enormously increased. The trial court was not wholly in error in saying that Miss Baldwin had the right of way, but the court erred in not qualifying that statement by pointing out the essential qualifications of that right and defining the circumstances under which the right would not apply. The state law not having *389 declared a definite rule of conduct, it was erroneous to declare that a failure to observe it on part of the driver upon the intersecting street is negligence per se. It must be held to be a question for the jury to determine under all the circumstances of the case, especially taking into consideration the relative distances of the vehicles from the intersection and the relative speeds of their progress.
It is argued that Section 6310-31 gives an unqualified right of way to vehicles on main thoroughfares. "While the language of that section is without qualification, nevertheless the term “right of way” employed in that section must be the particular right of way defined in Section 6310-28, and drivers on the main thoroughfare have only- a “preference” under that definition and not an unqualified license.
That part of the charge of the court above quoted, referring to the duty of the defendant to exercise ordinary care, and the further requirement in the same sentence that the jury must find that the accident proximately resulted from a want of due care, states correct propositions of law, but those propositions were confused and neutralized when the court added thereto the rule of per se negligence. If the declaration of per se negligence had been applied only and solely to the failure of defendant to stop his machine in obedience to the city ordinance, it would not have been erroneous. The ordinance imposes an absolute duty upon drivers on intersecting highways to stop before entering the .main thoroughfare, and a failure to do so is negligence per se, and when the accident proximately results therefrom the defendant is liable. In the city of Piqua *390 the ordinance imposes a greater obligation upon drivers on intersecting streets than is imposed by the state law, and the city has a right to impose such additional obligation.
Heidle having failed to stop, and the jury having rendered a general verdict upon the issue of negligence of the respective parties, and the accident having occurred in a city where the . duty to stop was imposed, it may-be inferred that the jury reached the conclusion that the failure to stop was the direct and proximate cause of the collision, and if plaintiff’s negligence had not been put in issue, both by the answer and the cross-petition, the verdict and judgment might be sustained upon that theory. On the other hand, plaintiff’s negligence is put in issue by both the answer and cross-petition, and defendant was therefore entitled to have that issue properly submitted. The jury could not properly estimate plaintiff’s conduct under an erroneous interpretation of the preference accorded to plaintiff under the statute and ordinance giving her the right of way. The erroneous instruction was. therefore prejudicial, and the judgment of the Court of Appeals and of the common pleas court must be reversed and the cause remanded for new trial.
Inasmuch as the cause must again be tried, it is proper to point out another error in the charge, because it imposed too great a burden upon the plaintiff. The court charged:
“The burden of proof is not upon the plaintiff, however, in the first place to prove that she was free from negligence contributing to her own injury, unless her own evidence raised that presumption in *391 your minds, in which event she would be required to remove that presumption by a preponderance of all the evidence in the case.”
This instruction was erroneous, because the plaintiff, under such circumstances, was only required to balance the presumption by evidence of equal weight, and not by a preponderance.
Cause No. 20586 comes to this court from Cuyahoga county. It was a personal injury suit growing out of a collision between an automobile being driven from an intersecting street into a main thoroughfare, where it came into collision with a street car. A verdict for the defendant, upon which judgment was entered in the trial court, was reversed in the Court of Appeals because of error in the following instructions:
“I charge you, as a matter of law, that Woodland avenue is and was on December 29, 1924, a main thoroughfare in the city of Cleveland and that the street car of the defendant under the ordinances and state laws had the right of way over the vehicle operated by the plaintiff on the day in question. By right of way I mean that the street car of the defendant had the right to proceed uninterruptedly in a lawful manner in the direction in which it was moving in preference to the vehicle of the plaintiff approaching from East Forty-Seventh street.
“The violation of an ordinance or a state law is negligence as a matter of law, and if you find that the plaintiff in this case was guilty of a violation of any ordinance or state law and such violation directly contributed to produce the accident, then your verdict must be for the defendant.”
It is apparent that the above-quoted charge con *392 tains the same vice as the charge in cause No. 20686, and the judgment of the Court of Appeals in that case must therefore be affirmed.

In cause No. 20686, judgment reversed.

In cause No. 20586, judgment affirmed.

Allen, Kinkade, Robinson and Matthias, JJ., concur.