This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Plaintiff-Appellant Steve Feist, dba Feist Mold and Die, has appealed from an order of the Summit County Court of Common Pleas that granted summary judgment in favor of Defendant-Appellee Karl Plesz on the issue of Plesz' personal liability. This Court affirms in part, reverses in part, and remands for further proceedings.
 I {¶ 2} In June 2001, Steve Feist, dba Feist Mold and Die, filed a complaint in the Summit County Court of Common Pleas. Feist's complaint named as defendants Karl Plesz,[1] individually and dba PQC Design, Inc ("PQC"). In the complaint, Feist alleged that he and Plesz entered into an oral contract whereby Plesz agreed to prepare a set of working drawings for use in the production of plastic injection molds. Feist alleged that he fulfilled his obligations under the contract, including payment to Plesz of $6,800, but the drawings produced by Plesz were "flawed" and/or "useless for [their] bargained for purposes." Feist's complaint alleged causes of action based on breach of contract, negligence, and breach of express and implied warranties.
 {¶ 3} Plesz filed an answer denying the material allegations of the complaint, and thereafter filed a motion for summary judgment on Feist's claims of Plesz' personal liability. In support of his motion, Plesz argued that he produced the drawings for Feist as an owner, officer, and employee of PQC, and not in his individual capacity. Plesz asserted that Feist was unable under Ohio law to "pierce the corporate veil" of PQC and obtain judgment against Plesz personally for any liability resulting from the failed business transaction. Feist did not respond to the motion.
 {¶ 4} In January 2002, the trial court entered an order granting Plesz' motion for summary judgment, on the ground that Feist failed to introduce evidence adequate to pierce the corporate veil of PQC and reach Plesz individually. Feist filed a motion requesting the trial court to reconsider its order of summary judgment, which was denied by the trial court. The parties thereafter agreed to submit the case to binding arbitration, and the arbitrators found in favor of Feist in the amount of $75,000. Feist filed a motion seeking prejudgment interest on that award, which was denied by the trial court. Feist has timely appealed, asserting three assignments of error.
 II. Assignment of Error Number One
"THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF [PLESZ]."
{¶ 5} In his first assignment of error, Feist has argued that the trial court erred in granting summary judgment in favor of Plesz on the issue of Plesz' personal liability. Feist has argued that his claims against Plesz were based on his own negligence and breach of contract, and did not require any piercing of the corporate veil of PQC.
 {¶ 6} Pursuant to Civ.R. 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated;
(2) the moving party is entitled to judgment as a matter of law; and
 (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc.
(1977), 50 Ohio St.2d 317, 327.
 {¶ 7} Appellate review of a lower court's entry of summary judgment is de novo, applying the same standard used by the trial court.McKay v. Cutlip (1992), 80 Ohio App.3d 487, 491. The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record that demonstrate an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293. The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of his motion.Id.
 {¶ 8} Once this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id. The nonmoving party may not rest upon the mere allegations and denials in the pleadings, but instead must point to or submit some evidentiary material showing that a genuine dispute over material facts exists. Henkle v. Henkle (1991), 75 Ohio App.3d 732, 735. However, a non-moving plaintiff has no obligation to respond to a motion for summary judgment by raising or otherwise supporting the factual allegations in his complaint unless the moving defendant has satisfied his initial burden of demonstrating that there are no genuine issues of material fact. See Kulch v. Structural Fibers, Inc. (1997),78 Ohio St.3d 134, 147; see, also, Dresher, 75 Ohio St.3d at 293 ("If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied.").
 {¶ 9} In his motion for summary judgment, Plesz argued that he created the drawings for Feist in his capacity as PQC, and not individually. Along with his motion, Plesz submitted an affidavit in which he averred that PQC was a corporation in good standing and duly registered with the State of Ohio at the time the events set forth in Feist's complaint occurred. Plesz further asserted that he was the president and majority shareholder of PQC. Citing Belvedere CondominiumUnit Owners' Assn. v. R.E. Roark Cos., Inc. (1993), 67 Ohio St.3d 274, Plesz argued that he could not be held personally liable for the legal debts and obligations of PQC.
 {¶ 10} In Belvedere, the Ohio Supreme Court established the conditions under which shareholders could be held liable for corporate misdeeds:
 "The corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." Id., paragraph three of the syllabus.
 {¶ 11} In its order granting summary judgment in favor of Plesz, the trial court observed that Feist's complaint did not allege any fraud or illegality on the part of Plesz or PQC, and concluded that Feist therefore could not maintain any action against Plesz individually. Feist has maintained that the trial court erred in entering summary judgment because his claims against Plesz were based on his own negligence and breach of contract, and not as a shareholder of PQC. We agree. Plesz has incorrectly characterized this dispute as a matter of corporate law, where principles of agency are controlling. In arguing that he cannot be held personally liable unless the corporate veil of PQC can be pierced, Plesz has missed the "key distinction between corporate law and the law of agency" succinctly set forth by the United States District Court for the Southern District of Ohio:
 "The basis for the Plaintiffs' claims against Kazinetz is not simply that he may be liable for the acts of the corporation because of his position as an officer and shareholder. Rather, the Plaintiffs assert claims against Kazinetz because he personally engaged in the allegedly tortious conduct that forms the basis for those claims." Lambert v. Kazinetz (S.D.Ohio 2003), 2003 U.S. Dist. LEXIS 3657, *13.
 Feist's Negligence Claim {¶ 12} Feist's complaint alleged that Plesz, "[i]ndividually and dba" PQC, produced drawings negligently and in breach of a contract and warranties. As articulated in the complaint, the basis for Plesz' individual liability is that he allegedly negligently produced the drawings. "As with any tort, the negligent party, even if acting within the scope of employment, *** may be personally liable." Shatiewi v.Nationwide Ins. Co. (Nov. 23, 1994), 1st Dist. No. C-930756, 1994 Ohio App. LEXIS 5222, at *3, citing Richards v. Stratton (1925),112 Ohio St. 476, paragraph one of the syllabus. Feist's complaint therefore articulated a claim against Plesz individually for his own alleged negligence in preparing the drawings as an agent of PQC.
 {¶ 13} In his brief in support of his motion for summary judgment, Plesz stated that "while [Plesz], as the main employee of [PQC], created the computer aided drawings, he did so in his capacity as [PQC] and not individually." Plesz therefore asserted that he was entitled to summary judgment because "[Feist] does not allege nor can [Feist] prove fraud, illegality, or some abuse of the corporate format significant enough to `pierce the corporate veil' and attach personal liability to [Plesz]." As the negligence claim in Feist's complaint does not depend upon a showing of fraud, illegality, or piercing the corporate veil, Plesz failed to meet his initial burden under Dresher of showing the absence of genuine issues of material fact with respect to the essential elements of Feist's negligence claim. The trial court therefore erred in granting summary judgment in favor of Plesz on the issue of Plesz' individual liability on Feist's claim of negligence.
 Feist's Breach of Contract Claim {¶ 14} Likewise, "[i]t is well-settled in the law of agency that an agent who discloses neither the existence of the agency nor the identity of the principal is personally liable in his or her contractual dealings with third parties." Dunn v. Westlake (1991), 61 Ohio St.3d 102,106. Feist's complaint alleged that he "and [Plesz] entered into an oral contract" for the production of certain drawings. In his motion for summary judgment, Plesz asserted that "[a]ny alleged design work, any drawings produced, and any work performed for [Feist] was performed by [Plesz] doing business as [PQC] and not on an individual basis." With respect to the critical issue of whether Feist contracted with Plesz individually or as an agent of PQC, Plesz' assertion demonstrates the existence rather than the absence of a genuine issue of material fact. Plesz accordingly also failed to meet his initial burden under Dresher regarding the essential elements of Feist's claim for breach of contract.
 {¶ 15} For the foregoing reasons, Plesz' individual liability for the allegations in Feist's complaint are not predicated upon his official relation to PQC as an officer, director, or shareholder. Consequently, the trial court erred in granting summary judgment to Plesz individually on the basis that Feist failed to articulate grounds for piercing the corporate veil of PQC. Feist's first assignment of error is well taken.
 Assignment of Error Number Two "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN DENYING [FEIST'S] MOTION FOR RECONSIDERATION OF THE SUMMARY JUDGMENT IN FAVOR OF [PLESZ]."
 {¶ 16} In his second assignment of error, Feist has contended that the trial court erred in denying his motion for reconsideration of its order granting summary judgment in favor of Plesz on the issue of Plesz' individual liability. In light of our disposition of Feist's first assignment of error, we decline to address the merits of Feist's second assignment of error. See App.R. 12(A)(1)(c).
 Assignment of Error Number Three "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN SUMMARILY DENYING [FEIST'S] MOTION FOR PREJUDGMENT INTEREST."
 {¶ 17} In his third assignment of error, Feist has argued that the trial court erred in denying his motion for prejudgment interest. Feist has contended that the trial court should have conducted a hearing on his motion, or referred the matter to the arbitration panel for a post-award hearing on the issue of prejudgment interest.
 {¶ 18} Whether to award or deny prejudgment interest is within the discretion of the trial court, and will not be reversed absent an abuse of that discretion. Scioto Mem. Hosp. Assn., Inc. v. Price Waterhouse
(1996), 74 Ohio St.3d 474, 479. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 19} Awards of prejudgment interest in contract actions are governed by R.C. 1343.03(A): "In cases other than those provided for in [R.C. 1343.01 and R.C. 1343.02], when money becomes due and payable *** upon all verbal contracts entered into, *** the creditor is entitled to interest at the rate of ten percent per annum[.]" R.C. 1343.03(C) controls awards of prejudgment interest in tort actions:
 "Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."
 {¶ 20} In a case in which prejudgment interest was awarded for a breach of contract claim against the state, the Ohio Supreme Court summarized the public policy reasons underpinning awards of prejudgment interest:
 "An award of prejudgment interest encourages prompt settlement and discourages defendants from opposing and prolonging, between injury and judgment, legitimate claims. Further, prejudgment interest does not punish the party responsible for the underlying damages *** but, rather, it acts as compensation and serves ultimately to make the aggrieved party whole." Royal Elec. Constr. Corp. v. Ohio State Univ.
(1995), 73 Ohio St.3d 110, 116-117.
 {¶ 21} In its order denying Feist's motion, the trial court concluded that the issue of Feist's entitlement to prejudgment interest pursuant to R.C. 1343.03(A) should have been presented at the arbitration hearing. We agree. In holding that an arbitration panel was vested with authority to apply the law governing prejudgment interest pursuant to R.C. 1343.03(A), the Ohio Supreme Court recently stated that the "`right to interest, the date from which interest should accrue, and the rate of interest involve questions of law and fact properly left to the discretion of the arbitrators.'" Miller v. Gunckle, 96 Ohio St.3d 359,363, 2002-Ohio-4932, ¶ 19, quoting 3 Macneil, Speidel 
Stipanowich, Federal Arbitration Law: Agreements, Awards, and Remedies under the Federal Arbitration Act (1999), Section 36.7.1.1. In the case sub judice, nothing in the record before this Court indicates that Feist ever requested prejudgment interest from the arbitration panel as part of a remedy to fully compensate him and make him whole. Consequently, the trial court did not abuse its discretion in denying Feist's motion for prejudgment interest under R.C. 1343.03(A), which was filed two weeks after the arbitrators' report and award.
 {¶ 22} In addition, the arbitrators' report and award did not specify whether the award in favor of Feist was based on his breach of contract or negligence claim. As a result, the trial court was unable to determine whether Feist could recover prejudgment interest pursuant to R.C. 1343.03(C), under which a party is entitled to prejudgment interest in a tort action when the court makes certain findings regarding the parties' efforts to settle the case. Since Feist neither requested the arbitrators to award prejudgment interest pursuant to R.C. 1343.03(A), or to specify whether his recovery was based on his tort or his contract claim, the trial court had no way to determine whether prejudgment interest under R.C. 1343.03(C) was appropriate. The court therefore did not abuse its discretion in denying Feist's motion. Feist's third assignment of error is without merit.
 III. {¶ 23} Feist's first assignment of error is sustained; we decline to address his second assignment of error; and his third assignment of error is overruled. The judgment of the trial court is affirmed in part, reversed in part, and the cause remanded for further proceedings consistent with this decision.
BATCHELDER, J. and CONCUR.
[1] Plesz has averred that he was misidentified in the complaint as "Carl" Plesz.