SCHAEFER, ADMRX., APPELLANT, *v.*
D & J PRODUCE, INC., ET AL., APPELLEES.

(No. E-77-41—Decided June 16, 1978.)

*Mr. John F. Dolan,* for appellant.
*Miller & Fegen Co., L.P.A.,* and *Mr. John Baird,* for appellee D & J Produce, Inc.
*Mr. John A. Pfefferle,* for appellees DeChant and Jones.
*Mr. T. L. Paffenbarger,* for appellees Charles Nickels and Charles Nickels, Inc.

POTTER, P. J.   Plaintiff's decedent received personal injuries and died therefrom as a result of an accident at the intersection of Ohio Rt. 113 and U. S. 250. The accident occurred when a truck driven by defendant James A. Beese and owned by defendant D & J Produce, Inc., failed to stop at a stop sign and collided with the vehicle driven by plaintiff's decedent. At the time of the accident, Beese was returning to the terminal of D & J Produce after having been dispatched by D & J to pick up corn which was brokered to D & J Produce by defendant Charles Nickels, Inc.

Plaintiff alleged that prior to the accident defendant Beese knew that the vehicle he was driving had a defective braking system, no operative hand brake, and no operative horn or other audible signal. Plaintiff also contended that it was the duty of defendants Robert Jones and Kenneth DeChant, officers of D & J Produce, to inspect and maintain the vehicle in a safe operating condition, and further contended that such defendants dispatched Beese in a truck they knew or should have known was not in a safe operating condition. Defendant Charles Nickels, Inc., and its officer, defendant Charles Nickels, were alleged to be engaged in a joint venture with defendant D & J Produce at the time of the accident.

All defendants except James Beese filed motions for summary judgment, and the following judgment was entered by the trial court:

"This cause came on to be heard on motions for summary judgment, pursuant to Rule 56 of the Ohio Rules of Civil Procedure. The Court, upon considerations of the pleadings, the affidavits, depositions, answers to interrogatories and all exhibits served and filed therewith in this action prior to the entry of judgment finds:

"1.   There is no genuine issue as to any material fact as to Charles Nickels and Charles Nickels, Inc. necessary to sustain a cause of action for personal injuries and wrongful death of Raymond A Schaefer, Jr. and Charles Nickels and Charles Nickels, Inc. are entitled to a judgment as a matter of law.

"2.   There is no genuine issue as to any material fact as to Robert Jones and Kenneth DeChant, individually, necessary to sustain a cause of action for personal injuries and wrongful death of Raymond A. Schaefer, Jr. and Robert Jones and Kenneth DeChant, individually, are entitled to a judgment as a matter of law.

"3. There is no genuine issue as to any material fact as to Robert Jones, Kenneth DeChant and D & J Produce, Inc. necessary to sustain any cause of action for punitive damages and Robert Jones, Kenneth DeChant and D & J Produce, Inc. are entitled to a judgment as a matter of law with respect to said claim for punitive damages.

"The Court further finds there is no just reason for delay in entering final judgment as to each summary judgment filed herein.

"It is therefore ordered, adjudged and decreed that Charles Nickels and Charles Nickels, Inc. be dismissed as to all causes of action; that Robert Jones and Kenneth DeChant be dismissed individually from all causes of action; that those allegations relating to punitive damages be stricken and that the cause of action for punitive damages be dismissed as to D & J Produce, Inc.

"And this matter is continued as to the cause of action for personal injuries and wrongful death of Raymond A. Schaefer, Jr. as against D & J Produce, Inc. and James A. Beese."

To this judgment plaintiff has filed the following Assignments of Error:

"The Court of Common Pleas in its Judgment and proceedings in this cause erred in:

"1. Determining that Charles Nickels and Charles Nickels, Inc. and each of them, are entitled to Judgment as a matter of law and that the evidence before the Court did not make a *prima facie* case against Charles Nickels and Charles Nickels, Inc. and each of them for the personal injuries sustained by Raymond A. Schaefer, Jr. and for the wrongful death of Raymond A Schaefer, Jr. and dismissing said claim of plaintiff.

"2. Determining that Robert Jones and Kenneth DeChant and each of them, are entitled to Judgment as a matter of law and that the evidence before the Court did not make a *prima facie* case against Robert Jones and Kenneth DeChant and each of them for the personal injuries sustained by Raymond A. Schaefer, Jr. and for the wrongful death of Raymond A Schaefer, Jr. and dismissing said claim of plaintiff.

"3. Determining that Robert Jones, Kenneth DeChant and D & J Produce, Inc. and each of them are entitled to Judgment on the plaintiff's claims for exemplary and punitive

damages arising from the cause of action against each of them for personal injury sustained by Raymond A. Schaefer, Jr.; and dismissing said claims of the plaintiff; and striking the allegations relating to exemplary and punitive damages.

"4. Determining that no genuine issue as to any material fact necessary to sustain a cause of action for personal injuries and a cause of action for wrongful death exists between the plaintiff and each of the following defendants: Charles Nickels, Charles Nickels, Inc., Robert Jones and Kenneth DeChant.

"5. Determining that no genuine issue as to any material fact exists necessary to sustain a cause of action for exemplary and punitive damages as to Robert Jones, Kenneth DeChant and D & J Produce, Inc."

The Assignments of Error contain overlapping assertions and, therefore, cannot be reviewed separately. The Civil Rule 56 test is to be applied here, not the prima facie case test alluded to in appellant's Assignments of Error. This court will consider the liability of the various parties as the Assignments of Error affect them. First, as to Charles Nickels and Charles Nickels, Inc., it is appellant's contention that both were engaged in a joint venture with D & J Produce, Inc., and, or, James Beese in the hauling of produce at the time of the accident. Relative to the assertion that these defendants were involved in a joint venture, it is clear that Charles Nickels and Charles Nickels, Inc., were not going to share in the profits of the sale of corn and that their only consideration was ten cents commission per bag of corn. These defendants had no relationship with or control of the other defendants named in the complaint. They were not principals, agents or coadventurers in the sense applicable to a joint venture. See *Ford* v. *McCue* (1955), 163 Ohio St. 498; *Al Johnson Const. Co.* v. *Kosydar* (1975), 42 Ohio St. 2d 29; *Bennett* v. *Sinclair Refining Co.* (1944), 144 Ohio St. 139.

The evidentiary material submitted did not make for an issue for reasonable minds as to any separate act of negligence on the part of these defendants.

Therefore, Assignments of Error 1 and 4, as they relate to defendants Charles Nickels and Charles Nickels, Inc., are not well taken.

To the extent that the following are applicable to the broadly drawn Assignments of Error, this court finds that the

trial court did not dismiss plaintiff's cause of action for personal injuries. It is this court's opinion that the trial court also left viable the issue of punitive damages for the personal injury cause of action as to the defendant driver, Beese. If this is not the intent of the judgment entry, we find that at this stage of the proceedings a decision on the issue of the applicability of punitive damages is premature and the test of Civil Rule 56 has not been met by the movants.

Relative to the wrongful death claim and punitive damages, the case of *Rubeck* v. *Huffman* (1978), 54 Ohio St. 2d 20, 22-23, holds as follows:

"The language of R. C. 2125.02 is clear. Damages in wrongful-death actions are limited to those for 'the pecuniary injury resulting from such death.' That is, they are limited to damages for 'loss of money, or something by which money or something of money value may be acquired' * * * and 'which have been cut off by the premature death of the person from whom they would have proceeded.' *Karr* v. *Sixt* (1946), 146 Ohio St. 527, paragraph six of the syllabus. Since punitive damages are 'assessed over and above that amount adequate to compensate an injured party' (*Ranells* v. *Cleveland* [1975], 41 Ohio St. 2d 1, 7), they are, by definition, not available in a wrongful death action."

To have a right to punitive damages, the Supreme Court, in *Rubeck, supra,* at 23, held:

"Since there is no right to punitive damages in a wrongful-death action, the trial court's award of punitive damages in the instant cause is valid only if Clair Rubeck had a right to such damages which survived his death pursuant to R. C. 2305.21. It is established law in this state that one may obtain punitive damages for personal injury or property loss caused by 'intentional, reckless, wanton, willful and gross acts' or by malice 'inferred from conduct and surrounding circumstances.' *Columbus Finance* v. *Howard* (1975), 42 Ohio St. 2d 178, 184. *Moreover, the right to such damages continues even when the person so injured has died and the personal injury or property loss claim is pursued by the representative of his estate under R. C. 2305.21.* See *Fielder* v. *Ohio Edison Co.* (1952), 158 Ohio St. 375; *Mahoning Valley Ry. Co.* v. *Van Alstine* (1908), 77 Ohio St. 395. Therefore, *if Paul Rubeck alleged and proved that the deceased suffered personal injury or property loss as a*

*result of the collision and before he died, the trial court's award of punitive damages should be upheld.*" (Emphasis added.) See also *Hawkins* v. *Ivy* (1977), 50 Ohio St. 2d 114.

Therefore, D & J Produce, on the theory of respondeat superior, may be liable for punitive damages on the personal injury cause of action if applicable. To this extent Assignment of Error 3 is well taken.

Appellant's fifth Assignment of Error also concerns exemplary and punitive damages, but appellant does not specify whether that assignment of error relates to the wrongful death action or to the cause of action for personal injuries. In view of the other Assignments of Error which specifically relate to the issue of exemplary and punitive damages on the claim for personal injury, we interpret the fifth Assignment of Error to be confined solely to the issue of summary judgment in favor of Robert Jones, Kenneth DeChant and D & J Produce on appellant's claim for exemplary and punitive damages in the wrongful death action. *Rubeck* v. *Huffman, supra,* as quoted above, held that punitive damages cannot be recovered in an action under Ohio's Wrongful Death Statute, R. C. 2125.02. The fifth Assignment of Error is, therefore, not well taken.

Appellant also argues that the trial court committed error in granting summary judgment in favor of Kenneth DeChant and Robert Jones in their individual capacities on both of appellant's causes of action to-wit, wrongful death and personal injury. DeChant and Jones were officers of D & J Produce when the fatal accident occurred. Their official relationship to the corporation will not alone suffice to make them personally liable to third persons for the acts of the corporation. See *e.g. Young* v. *Featherstone Motors, Inc.* (1954), 97 Ohio App. 158; 12 Ohio Jurisprudence 2d 667, Corporations, Section 544; 3A Fletcher Cyc Corp. 207, Section 1137 (1975). Officers are agents of the corporation and their liability to third persons is governed by the ordinary principles of agency. 3A Fletcher, *supra,* at Section 1135. An agent is personally liable to a third party who was injured by the agent's wrong. The existence of the agency relationship is not a defense to an action even though the principal may also be liable to the third party. See 2 Ohio Jurisprudence 2d 207, Agency, Section 142.

Early Ohio cases drew a distinction between an agent's

acts of misfeasance or positive wrongs, and an agent's nonfeasances or omissions of duty. The agent was held personally liable to third parties for his positive wrongs and misfeasances but, in general, the agent was not held liable to third persons for his nonfeasances and omissions of duty therein. See 2 Ohio Jurisprudence 2d 208, Agency, Section 144 and cases cited therein. Later Ohio decisions, particularly *Richards* v. *Stratton* (1925), 112 Ohio St. 476, and *Employers' Fire Ins. Co.* v. *U.P. Service, Inc.* (1950), 89 Ohio App. 447, indicate a departure from reliance on distinctions between misfeasance and nonfeasance as the measure of an agent's liability. These cases are in line with the modern trend of authority summarized in 2 Ohio Jurisprudence 2d 208, Agency, Section 144, as follows:

"The modern tendency of the courts is to repudiate, in cases where the agent has actually undertaken the work, any distinction as to the liability of agent to third persons in tort, based on the fact that the cause of the injury may be an omission to perform some act—a nonfeasance—rather than a positive misfeasance, and to hold the agent liable equally for his nonfeasances or negligent omissions of duty (in the sense of omitting to do some part of the work he has actually undertaken to do) as for his positive misfeasances***."

As observed in *Employers' Fire Ins. Co., supra,* at 452, the difficulty with using the terms "misfeasance" and "nonfeasance" as a criterion of the agent's liability "is that the terms themselves require definition to determine when nonfeasance ceases and misfeasance or malfeasance begins." This method of determining an agent's liability has been severely criticized. See *e.g. Darling & Co.* v. *Fry* (Mo. App. 1930), 24 S.W. 2d 722; 19 American Jurisprudence 2d 784, Corporations, Section 1388; 19 Corpus Juris Secundum 273, Corporations, Section 846. See also 2 Restatement of Agency 2d 125, Section 354 (1958); Restatement of Torts 2d 142, Section 324A (1965).

In *Richards, supra,* plaintiff, who was injured when he fell into a trench, sought damages from the agent who had dug the trench for his principal because, *inter alia,* the agent failed to put up lanterns or to otherwise warn the plaintiff and other passers-by of the existence of the trench. While the *Richards* court rejected the agent's contention that the alleged

negligence was a mere nonfeasance for which the agent would not be responsible to the injured third party, the court did appear to retain a semblance of the original distinction between misfeasance and nonfeasance by announcing a rule which limited an agent's liability to cases where the agent had actually entered upon the execution of the job undertaken for the principal. That rule was not explicitly incorporated into the syllabus of the *Richards* opinion. In any event, we question whether any benefit can be derived by attaching the labels "misfeasance" or "nonfeasance" to particular activity. We also doubt that there should be any real significance, in terms of the determination of liability, in a distinction between an agent who wholly fails to undertake the principal's work and an agent who does a small part of the principal's work and fails to do the rest, once it has been decided that the agent owed a duty to the injured third person. *Canter* v. *Koehring Co.* (La. 1973), 283 So. 2d 716, 721, illustrates what we view as the better approach to determining whether a corporate officer can be individually liable for injuries to a third party. There, the court established the following criteria for imposing individual liability:

"1. The principal or employer owes a duty of care to the third person (which in this sense includes a co-employee), breach of which has caused the damage for which recovery is sought.

"2. This duty is delegated by the principal or employer to the defendant.

"3. The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances—whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.

"4. With regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent or employee simply because of his

general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm."

The court also noted, at 722:

"The failure to act as required by the employment duty may deprive the third person of a protection owed him by the principal or employer, and such risk of harm because of the breach may have been reasonably foreseeable. Thus, the breach of the duty imposed by the employment or agency relationship may, under general tort principles, be actionable negligence because of the creation or maintenance thereby of an undue risk of harm to others."

In the case *sub judice,* appellees DeChant and Jones admit that their principal, D & J Produce, had a continuing duty mandated by R. C. 4513.20 and 4513.21 to maintain the brake equipment and horns on the vehicles owned by the corporation. There can be no dispute that this duty was owed to third parties, including appellant's decedent. Appellees DeChant and Jones appear to contend that the non-delegable nature of the duty imposed by law upon D & J Produce per se prevents them from being held individually liable for injuries caused by a breach of the duty. We cannot agree. The effect of a determination that a particular duty is non-delegable is that the principal upon whom the duty is imposed cannot, by assigning the performance of that duty to an agent or an independent contractor, escape liability for the agent's or independent contractor's subsequent breach of that duty. The person to whom the duty is delegated remains liable to a third party injured by the breach of the duty under the ordinary principles of tort law. Thus, the fact that the duty herein involved could be nondelegable affects only the liability of D & J Produce and not the liability of the individual officers. If the other elements of the cause of action are satisfied, then D & J Produce, Kenneth DeChant and Robert Jones would be jointly and severally liable.

We find that reasonable minds could reach different conclusions as to the issue of whether there was an assignment of the duty to keep the brakes and horn of the trucks in good working order from the corporation to DeChant and Jones. We also find that different conclusions are possible on the issues of whether appellees DeChant and Jones entered upon the performance of the duty and whether the duty was breached. We, therefore, hold that a summary judgment was improperly granted for Kenneth DeChant and Robert Jones on appellant's causes of action for wrongful death and personal injuries, and for punitive damages on the personal injury claim. The second, third and fourth Assignments of Error are to this extent well taken.

In summary, our holdings with respect to the liability of the various parties are as follows: Charles Nickles and Charles Nickles, Inc., were properly dismissed from the action; D & J Produce, James A. Beese, Robert Jones and Kenneth DeChant remain as defendants; plaintiff's cause of action for personal injuries and his claim for punitive damages for the personal injuries remains viable as to all the remaining defendants; and plaintiff's claim for punitive damages in the wrongful death action was properly dismissed as to all defendants.

*Judgment affirmed in part*
*and reversed in part and*
*cause remanded.*

BROWN and CONNORS, JJ., concur.