SAMUEL, Judge.
Plaintiff, Lisle Nine, filed this suit for personal injuries received in an accident while employed by Geosource, Inc. on December 16, 1975. Named defendants were Jess Harper, Robert Copeland, Norman Ar-ceneaux, Jean Buffington and others.
Defendants, Harper, Arceneaux and Copeland, filed a motion for summary judgment. After a hearing thereon, the trial court granted defendants’ motion for summary judgment and dismissed plaintiff’s suit against those three defendants. Plaintiff has appealed from that judgment.
The affidavits and depositions in the record show plaintiff was injured on December 16, 1975, at which time he was employed by Geosource, Inc., while steadying pipe attached to a “cherry picker” which either touched or came in close proximity to an overhead power line. He was shocked and burned by the electricity from the line.
*322 Harper, Copeland and Arceneaux are all “executive officers” of Geosource, Inc., the same company which employed plaintiff. In December, 1975 Copeland, the operations manager and top local executive of Geo-source’s Hunt Engine Division plant at Harvey, Louisiana, received orders from his superiors in Houston to improve and enlarge the parking lot at the Harvey plant. Copeland’s primary function is stated to be the administration of the general management and financial business of the Harvey plant and the five departments into which it is divided. His affidavit states he delegated and assigned the responsibility for improving and enlarging the parking lot to defendant, Harper, who occupied the position of manager of the fabrication department. Harper, in turn, delegated responsibility for carrying out the project to another defendant, Gene Buffington, a mechanical and welding supervisor. Arceneaux is stated to be the safety coordinator of the Harvey plant, and his duties included overseeing general safety programs, instruction of new employees with regard to plant safety policies, issuance of written safety instructions and equipment to plant employees, making safety inspections of the building and equipment, rendering safety reports to management, and directional general safety meetings held monthly for all employees. In his affidavit Arceneaux denies his duties included monitoring individual daily tasks and supervising the work of employees for safety violations. He stated job safety was the responsibility of the supervisors or foremen of the individual jobs and of the individual employees themselves.
The law applicable to the case is not substantially disputed. Article 966, Louisiana Code of Civil Procedure, states:
“The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff’s motion may be made at any time after the answer has been filed. The defendant’s motion may be made at any time.
The motion for summary judgment shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the day of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” LSA-C.C.P. Art. 966.
The substantive law to be applied by this court was set forth by the Supreme Court in the case of Canter v. Koehring Company,[1] which stated the criteria under which an officer, agent, or employee may be liable to a co-employee. The Canter court said:
“1. The principal or employer owes a duty of care to the third person (which in this sense includes a co-employee), breach of which has caused the damage for which recovery is sought.
2. This duty is delegated by the principal or employer to the defendant.
3. The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances — whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.
4. With regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative *323 responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff’s damages. If the defendant’s general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm.[6]
Plaintiff urges a question of material fact exists as to whether Copeland and Harper used due care in delegating the task of improving and enlarging the parking lot to a responsible subordinate. Defendants contend Harper was properly qualified because he had extensive supervisory, planning, and management experience in the , industrial field for more than ten years before his coming to work with Geosource. Defendants also contend delegation of the work to Buffington was proper because he was a mechanical and welding supervisor who had worked all of his adult life in construction and had been self-employed as a welding contractor. He was 47 years of age at the time of the accident.
To controvert these statements, plaintiff points out Harper admitted in his deposition he was only employed by Geosource for approximately 6 weeks prior to the accident, and that his duties as fabrication manager involved designing and building the electrical and mechanical packages manufactured by the company. Plaintiff further points to deposition evidence to show Buffington, from Colorado, had only been hired a few weeks prior to the accident, and Harper did not have an opportunity to know Buffington’s qualifications or abilities. Harper further states he had never done the work of laying pipe in a parking lot for Geosource. Plaintiff also argues that both Harper and Buffington had been hired to fabricate electrical and mechanical packages, and neither man was hired to build parking lots or lay pipe.
Arceneaux basically assumes the position in his affidavit that as safety coordinator he had no direct duty to supervise the daily work of the employees, whose safety was the responsibility of the supervisors, foremen, and employees themselves. Plaintiff, on the other hand, shows Arceneaux had little or no experience with laying pipe in the area of overhead power lines. By deposition, Arceneaux stated he had only 5 days of formal training in the field of safety. Moreover, even though he knew of the project to be undertaken and the need for laying drainage pipe in the parking lot, he had no warning signs posted to warn of the overhead power lines suspended from poles near the parking lot area. In deposition, Arceneaux further stated he knew when both Harper and Buffington were hired, the only safety meeting between Buffington and himself, was an initial 30 minute talk on safety at Geosource. Thus, plaintiff argues Arceneaux was guilty of negligence in failing to act on his actual knowledge of the situation and in delegating responsibility for safety to persons improperly trained in that area.
The evidence regarding the capabilities of various defendants seems to indicate they were properly suited for the job delegated to each of them. Nevertheless, the ultimate determination of the negligence of the executive officers in the area of their own personal fault (as in Arcen-eaux’s case) and in the area of proper delegation to responsible subordinates (involving Copeland, Harper and Arceneaux) is generally a question of fact to be deter *324 mined by the trial court.[2] In the present case, the evidence is not sufficient to justify removal of that fact-finding function from a trial on the merits.
For the reasons assigned, the judgment appealed from is annulled and set aside, and the matter is remanded to the trial court for further proceedings in accordance with law and with the views herein expressed.

ANNULLED; SET ASIDE; AND REMANDED.

. La., 283 So.2d 716.

 Thus, in Eschmann v. Moyer, 253 La. 818, 220 So.2d 86 (1969), we held that the corporate officer was not individually liable to an employee injured through an alleged premise defect upon our factual finding that there was ‘no personal negligence’, 220 So.2d 94, on the officer’s part because in fact no premise defect existed and because he had ordered reasonable maintenance and had checked to see these orders were carried out and had no personal, actual or constructive, knowledge of the alleged defect at the time of the accident.”

. See Curtis v. Gulf States Utilities Company, La.App., 306 So.2d 473.