941 F.2d 1210
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
RAYMAC LEASING CORP., et al., Plaintiffs-Appellants,
v.
U.S. BRANDS CORPORATION, et al., Defendants-Appellees.
 No. 90-4043.
 United States Court of Appeals, Sixth Circuit.
 Aug. 14, 1991.
 
 Before BOGGS, Circuit Judge, LIVELY, Senior Circuit Judge, and CLELAND, District Judge.*
 LIVELY, Senior Circuit Judge.
 
 
 1
 This is a diversity case in which the rights of the parties are controlled by the substantive law of Ohio. The plaintiffs are two Ohio corporations, Raymac Leasing Corporation and S & R Products, Inc., and their sole shareholder, Ray G. McIntire, an Ohio resident. The only defendant named in the original complaint was U.S. Brands, a New York corporation. The second amended complaint added three individual defendants, David Bonerb, Michael McGee and Michael P. Conroy, all New York residents, the appellees here.
 
 
 2
 The only question on appeal is whether the district court properly granted summary judgment in favor of the individual defendants. There was no appeal from a default judgment entered against U.S. Brands.
 
 I.
 A.
 
 3
 Plaintiff-appellant S & R Products, Inc. began a sugar repackaging business in Xenia, Ohio in 1980, which operated at a loss for two years. During that time, both the corporation and its sole shareholder, plaintiff-appellant Ray McIntire, incurred large debts in order to keep the business solvent. In May 1982, in an attempt to salvage the failing business, Mr. McIntire, for S & R Products, entered into a "Management Agreement" with the defendant U.S. Brands. Under the agreement, U.S. Brands acquired complete control over the management of S & R. The agreement required that all officers and directors of S & R resign. During the term of the agreement, U.S. Brands was to manage the packaging business for S & R, and make monthly payments to S & R of either $1.00 per hundred pounds of sugar packed or $10,000, which ever amount was greater. Those monthly payments, which eventually totalled over $227,000, enabled both McIntire personally and his corporation to make payments on their respective debts. The contract also permitted U.S. Brands to "cancel this agreement at any time in its sole discretion by giving notice to that effect" to S & R. McIntire also retained the option of cancelling the agreement if U.S. Brands did not make timely monthly payments. Under the agreement, in the event McIntire chose to cancel, his sole remedy was the cancellation of the agreement "and in no event [would] U.S. be liable for money damages to S & R."
 
 
 4
 U.S. Brands operated S & R's sugar packing operation for 20 months, until the end of February 1984. S & R contends that during that time, U.S. Brands fired all of S & R's management employees, transferred all of S & R's accounts receivable to the books of U.S. Brands in Buffalo, New York, transferred the servicing of all of S & R's customers to their plant in Buffalo, dismissed S & R's entire sales staff, took S & R's inventory of packaging materials to Buffalo, opened an additional sugar packing line at the plant in Xenia but paid nothing to S & R for the sugar packed from that line, and quit the management of S & R without providing it notice. The plaintiffs contend that after leaving S & R, U.S. Brands continued to service S & R's most valuable clients from their Buffalo plant and that U.S. Brands experienced a significant increase in sales volume as a result. The original complaint, filed in an Ohio state court, sought recovery from U.S. Brands on several different theories, including a claim for breach of the management agreement. In its answer U.S. Brands denied all material allegations of the complaint. The plaintiffs added Count V in their second amended complaint.
 
 B.
 
 5
 The defendants removed the case to the district court following the filing of the second amended complaint. After tentatively denying the defendants' motion for summary judgment as to all counts, upon reconsideration the district court granted the motion of the individual defendants and dismissed the only claims against them contained in Count V. The court specifically held that the management agreement was a valid contract which determined the rights and obligations of the parties. The plaintiffs do not question this holding on appeal. The court ruled that the individual defendants were not acting outside the scope of their employment with U.S. Brands and that they could not be liable individually for any alleged harm caused to the plaintiffs arising from a breach of the contract between their principal and the plaintiffs. In addition, the court held that the individual defendants could not be held personally liable to the plaintiffs for an alleged tort unless the tort consisted of breach of a duty owed to the plaintiffs independently of the contract between the plaintiffs and U.S. Brands.
 
 
 6
 After the individual defendants were dismissed, a default judgment was entered against U.S. Brands on the remaining counts of the complaint. The court found that U.S. Brands was liable, among other things, for breach of fiduciary duty owed to the plaintiffs, and awarded the plaintiffs $2.7 million in compensatory damages and $1.5 million in punitive damages.
 
 C.
 
 7
 On appeal, the plaintiffs seek reversal of the district court's dismissal of Count V, which we copy in full:
 
 COUNT V
 
 8
 1. Plaintiff, Ray G. McIntire, is the sole shareholder of Plaintiff, S & R Products, Inc., an Ohio Corporation which was chartered on or about November 3, 1970. On or about June 1, 1982, S & R Products, Inc., was in the business of packaging raw sugar and was selling and distributing packaged sugar to customers in Michigan, Illinois, Indiana, Ohio, Kentucky, and Pennsylvania.
 
 
 9
 2. Pursuant to the agreement attached hereto as Exhibit "B," Plaintiff, Ray G. McIntire, resigned as an officer and director of S & R Products, Inc., and turned the total management of that corporation over to U.S. Brands Corp. and its principal officers, David Bonerb, Michael McGee, and Michael P. Conroy. In assuming the control and management of S & R Products, Inc., the Defendants acted in place of the officers and directors of S & R Products, Inc., and became the defacto officers and directors of S & R Products, Inc., and as such owed a fiduciary duty to Plaintiff, Ray G. McIntire, sole shareholder of S & R Products, Inc., to see that the assets and business of S & R Products, Inc., were honestly conserved and managed and to see that same were not wasted or mismanaged. In violation of their duty, the Defendants did cause and permit the assets, business, customers, and corporate opportunities of Plaintiff, S & R Products, Inc., to be wasted and mismanaged by diverting the same to the benefit of U.S. Brands Corp.
 
 
 10
 3. As a result of the acts alleged, the Defendants, other than Defendant, U.S. Brands Corp., have directly and indirectly profited and are continuing to profit at the expense of Plaintiff, S & R Products, Inc., which continues to sustain losses, and was left and abandoned by the Defendants on or about February 28, 1984, in such physical and financial condition that it could no longer operate.
 
 
 11
 4. No demand has been made upon the Defendants to bring an action for relief appropriate to the facts herein alleged, inasmuch as Defendants participated in the acts herein complained of and a demand upon them to sue themselves would be ignored and a vain and futile act.
 
 II.
 
 12
 In reviewing the district court order granting a motion for summary judgment, this court conducts a de novo review, making all reasonable inferences in favor of the non-moving party to determine if a genuine issue of material fact exists. E.E.O.C. v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990).
 
 A.
 
 13
 The only claim against the individual defendants was framed as a shareholder's derivative action. Count V charged that when U.S. Brands took over management of S & R following the resignation of McIntire as an officer and director "[p]ursuant to the [management] agreement," the defendants as principal officers of U.S. Brands "became defacto officers and directors of S & R Products, Inc., and as such owed a fiduciary duty" to McIntire to see that S & R's assets were conserved and not wasted or mismanaged. In response to the motion for summary judgment, the plaintiffs produced no evidence that the individual defendants ever acted other than as employees of U.S. Brands or that they did anything with respect to S & R except in that capacity. The plaintiffs offered no evidence that the defendants made policy decisions, as directors, or purported to act for anyone but U.S. Brands, their employer. There is no issue of their fiduciary duty to U.S. Brands. The fact that they assumed control of S & R as employees of U.S. Brands did not create a fiduciary relationship of officers/directors between them and S & R. While finding no basis for relief against the individual defendants, the district court implicitly found that a fiduciary relationship was created between the plaintiffs and U.S. Brands by the management agreement between U.S. Brands and S & R, and awarded both compensatory and punitive damages against U.S. Brands for breach of fiduciary duties.
 
 B.
 
 14
 McIntire argues that Ohio recognizes joint and several liability of a corporation and its employees who commit a tortious act that injures a third party. He relies on cases involving personal injuries and economic losses to third parties resulting from negligence by an employee acting in the course of his employment, Schaefer v. D & J Produce, 62 Ohio App.2d 53 (1978), 403 N.E.2d 1015; and from fraudulent misrepresentations, Stoney Ridge Hill Condominium Owners Assoc., 64 Ohio App.2d 40, 410 N.E.2d 782 (1979).
 
 
 15
 In agreement with the district court, the defendants argue that the plaintiffs seek to misapply the holdings in the cases establishing joint and several liability. In each case, the duty that was breached by the employee while acting for his employer arose independently of any contractual relationship between the injured person and the employer. The defendants contend that when the duty owed to the injured party arises solely from a contract, the only recovery available is for breach of contract. When there is a contractual relationship between the injured party and the injury occurs in the course of performing the contract, there is no separate tort cause of action according to the defendants. In these circumstances for a court to impose liability, the defendants contend, there must be an independent duty owed the injured party, completely apart from duties created by the contract.
 
 III.
 
 16
 This court held in Battista v. Lebanon Trotting Assoc., 538 F.2d 111 (6th Cir.1976), a diversity case from Ohio, that when the gravamen of the plaintiff's pleadings is a breach of contract, appending a claim that the breach was malicious does not convert the action into one for tort.
 
 
 17
 A tort exists only if a party breaches a duty which he owes to another independently of the contract, that is, a duty which would exist even if no contract existed. However, when the promisee's injury consists merely of the loss of his bargain, no tort claim arises because the duty of the promisor to fulfill the term of the bargain arises only from the contract. The tort liability of parties to a contract arises from the breach of some positive legal duty imposed by law because of the relationship of the parties, rather than from a mere omission to perform a contract obligation. Bowman v. Goldsmith Bros. Co., 109 N.E.2d 556, 63 Ohio Law Abst. 428 (Ct.App.1953).
 
 
 18
 Id. at 117. The courts of Ohio consistently require an independent duty, not intertwined with a contractual relationship as the basis of a tort claim by one of the contracting parties against the other contracting party, or its employees and agents. See e.g., First Federal Savings & Loan Assoc. of Toledo v. Bostic and Zimpfer, No. 88AP-40 (Ohio Court of Appeals, 10th District, 1988) (1988 WL 115948). The court in First Federal specifically distinguished Schaefer v. D & J Produce, relied upon by the plaintiffs here, on the ground that Schaefer was not an action for breach of contract, but strictly one for tort.
 
 A.
 
 19
 We conclude that the district court properly granted summary judgment in favor of the individual defendants. Faced with a motion for summary judgment addressed to their claim that the defendants were liable to the plaintiffs for breach of a fiduciary duty imposed upon them as "de facto directors," the plaintiffs could not merely rely upon their pleadings. Fed.R.Civ.P. 56(e). The party opposing the motion must offer some evidence (more that a scintilla) to overcome the motion. Fed.R.Civ.P. 56(c) requires the entry of summary judgment, after sufficient time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and upon which that party will have the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The plaintiffs failed to meet this requirement, and summary judgment followed.
 
 B.
 
 20
 The only claim in Count V is for a derivative shareholder's action on behalf of McIntire for alleged breach of fiduciary duties by "de facto" directors and officers. Nevertheless, the district court's opinion and the parties' briefs indicate that the case was also treated as asserting a direct tort action against a principal (U.S. Brands) and its agents (the three individual defendants). Assuming that such a claim was thus presented by consent pursuant to Fed.R.Civ.P. 15(b), we believe the district court properly granted summary judgment.
 
 
 21
 It is clear that the second amended complaint sounds in contract, not in tort. It refers to the management agreement as the basis of the defendants' claimed liability throughout, and specifically in Count V, the only count that names the individual defendants. The law of Ohio appears settled that a plaintiff suing under a contract may recover for the defendant's tort only if the defendant breaches a duty to the plaintiff that exists independently of their contractual relationship. Here the gravamen of the complaint is breach of contract and the alleged tort claim against these defendants is inextricably intertwined with the breach of contract claim asserted in Count II of the complaint.
 
 
 22
 The judgment of the district court is affirmed.
 
 
 
 *
 The Honorable Robert H. Cleland, U.S. District Judge for the Eastern District of Michigan, sitting by designation